IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HILLARY ANN DIAMOND EVANS, as Executor of the Estate of Gregory C. Diamond and Trustee of the Gregory C. Diamond Family Living Trust, THE ESTATE OF GREGORY C. DIAMOND, and THE GREGORY C. DIAMOND FAMILY LIVING TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>BETTY EILEEN DIAMOND,<br><br>Defendant. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Consolidated Case Nos. 2:18-cv-722; 1:18-cv-98<br><br>Judge Clark Waddoups |

**Introduction**

Before the court is Defendant Betty Eileen Diamond's Motion to Dismiss Plaintiffs' Complaint, (ECF No. 3). As explained below, the court grants the Motion for failure to state a claim upon which relief can be granted.

**Factual History**

Gregory Diamond (Gregory) was previously married to Defendant Betty Diamond (Betty). (*See* 2nd Am. Compl. ¶ 8, ECF No. 3-1 at 2.) "During her marriage to Gregory, Betty was the listed beneficiary of record of Gregory's government Thrift Savings Plan (TSP) retirement account." (2nd Am. Compl. ¶ 9, ECF No. 3-1 at 3.) Gregory and Betty divorced and a state court entered "the Divorce Decree dissolving [their] marriage . . . on November 22, 2013." (2nd Am. Compl. ¶ 8, ECF No. 3-1 at 2.) The Divorce Decree provided, in part, that Betty "waived her interest in [Gregory's] retirement accounts. Therefore, [Gregory] is awarded any

1

and all interest in his retirement accounts, free and clear of any claim of [Betty]." (ECF No. 3-1 at 20.)

"Gregory passed away in August 2017." (2nd Am. Compl. ¶ 11, ECF No. 3-1 at 3.) At the time of his death, Betty was still listed "as the beneficiary of Gregory's TSP retirement account." (*See* ECF No. 8 at 4.)

**Procedural History**

On August 8, 2018, Hillary Ann Diamond Evans, Whitney Elizabeth Diamond Evans, Joel Curtis Diamond, and Lauren Arianne Diamond Shepherd filed a Complaint against Defendant Federal Retirement Thrift Investment Board and Defendant Thrift Savings Plan. (1:18-cv-98, ECF No. 2.) That case was assigned to Judge Parrish on that day. (1:18-cv-98, ECF No. 2.) On August 14, 2018, Judge Parrish recused, and the case was assigned to Judge Kimball. (1:18-cv-98, ECF No. 5.) In the Complaint filed in that case, the Plaintiffs alleged that Gregory "executed a TSP-3 change of beneficiary form identifying Plaintiffs as the new beneficiaries of his TSP retirement account." (1:18-cv-98, Compl. ¶ 17, ECF No. 2 at 3.)

Hillary Diamond Evans, the Estate of Gregory C. Diamond, and The Gregory C. Diamond Living Family Trust filed their Second Amended Complaint against Betty on or after August 16, 2018, in the District Court of the Third Judicial District in and for Salt Lake County, State of Utah. (ECF No. 2 at 2.) On September 13, 2018, Betty filed a Notice of Removal, removing the case that Hillary Diamond Evans and others had originally filed in state court. (ECF No. 2.) This case was given case number 2:18-cv-722 and was assigned to the undersigned on that day. (ECF No. 1.) Betty filed a Motion to Dismiss on that day as well. (ECF No. 3.) On October 9, 2018, Plaintiffs filed their Opposition. (ECF No. 8.) In their Opposition, Plaintiffs provided that "[f]or purposes of this litigation, Plaintiffs do not dispute Betty is the beneficiary of

the TSP retirement account." (ECF No. 8 at 11.) But Plaintiffs also provided that they "believe Gregory attempted to change his beneficiary designation to his children prior to his death, and a separate suit (Case No. 1:18-cv-00098) is pending against the TSP with respect to that issue." (ECF No. 8 at 11 n. 2.)

On December 28, 2018, the parties filed a stipulated motion to consolidate Case No. 1:18-cv-00098 into 2:18-cv-722. (*See* ECF No. 14 at 1.) On January 2, 2019, the court granted the stipulated motion. (ECF No. 15.)

**Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim when the plaintiff fails to state a claim upon which relief can be granted. The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties may present at trial but to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has alleged facts that allow "the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Analysis**

As noted above, at the time of Gregory's death, the TSP "still listed Betty as the beneficiary of Gregory's" Thrift Savings Plan retirement account. (*See* ECF No. 8 at 4.) The Federal Employee Retirement Systems Act (FERSA) defines beneficiary as "an individual (other than a participant) entitled to payment from the Thrift Savings Fund under subchapter III of this chapter [5 U.S.C. §§ 8431–8440f.]" 5 U.S.C. § 8471(1). An employee or member designates a beneficiary by having a "signed and witnessed writing" submitted to the Board's Office before the participant's death. 5 U.S.C. § 8424(d).

If an employee or member dies, benefits "shall be paid to the individual or individuals surviving the employee or Member . . . alive at the date title to the payment arises," in an "order of precedence" that places the "beneficiary . . . designated by the employee or Member" above all others. *See* 5 U.S.C. § 8424(d). Additionally, "payment" of the benefits "bars recovery by any other individual." 5 U.S.C. § 8424(d). The statute further provides that "a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect." 5 U.S.C. § 8424(d).

In her Motion to Dismiss, Betty argues that Plaintiffs' Complaint should be dismissed for three reasons: (I) for lack of standing; (ECF No. 3 at 5) (II) for failure to state a claim upon which relief can be granted due to waiver under the laws of the state of Utah; (ECF No. 3 at 7) and (III) for failure to state a claim upon which relief can be granted because "TSP rules and regulations preempt conflicting state property rights." (ECF No. 3 at 11.) Resolution of this Motion only requires the court to address Betty's third argument—preemption. For purposes of resolving the instant Motion to Dismiss, the court assumes that "Plaintiffs do not dispute [that] Betty is the beneficiary of the TSP retirement account." (ECF No. 8 at 11.)

"State law is pre-empted 'to the extent of any conflict with a federal statute.'" *Hillman v. Maretta*, 569 U.S. 483, 490, 133 S. Ct. 1943, 1949–50, 186 L. Ed. 2d 43 (2013) (quoting *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000)). "Such a conflict occurs when compliance with both federal and state regulations is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. at 1950 (citation omitted) (internal quotation marks omitted). "The regulation of domestic relations is traditionally the domain of state law." *Id*. "But family law is not entirely insulated from conflict pre-emption principles," and so the Supreme Court has "recognized that state laws governing the economic aspects of domestic relations must give way to clearly conflicting federal enactments." *Id*. (citation omitted) (internal quotation marks omitted).

"To determine whether a state law conflicts with Congress' purposes and objectives, [the court] must first ascertain the nature of the federal interest." *Hillman*, 569 U.S. at 491. Betty, in her Reply, argues that "the U.S. Supreme Court case of *Hillman v. Maretta*, 569 U.S. 483 (2013) clearly laid out the intent of congress that state law attempts to redirect distributions of federal retirement contrary to the beneficiary designations set up under them are preempted." (ECF No. 9 at 8.) But neither party identifies Congress' specific purpose in enacting FERSA.

Plaintiffs argue that "[e]ven if Federal Law requires that the TSP distribute the proceeds of Gregory's TSP retirement account to Betty, the Estate is not precluded from bringing an action against Betty to reclaim the proceeds based on the Divorce Decree." (ECF No. 8 at 13 (citation omitted); *see also* ECF No. 8 at 14 ("even if Betty is the proper designated beneficiary of Gregory's TSP retirement account, the Estate and the Trust may still bring suit against Betty seeking a judicial declaration of the parties' rights pursuant to the Divorce Decree when and if

5

the funds are distributed.").) Based on these arguments, the court can reasonably infer that it is Plaintiffs' position that Congress' only purpose in enacting FERSA was "to advance administrative convenience by establishing a clear rule to dictate where the Government should direct . . . proceeds." *C.f. Hillman* 569 U.S. at 491.

Betty, on the other hand, argues that she is entitled to keep the proceeds of the TSP retirement account. (*See* ECF No. 3 at 14 ("[f]or all we know, it was Gregory's intent and desire that Betty remain the beneficiary of the death benefits of the TSP and the facts seem to indicate this.").) Based on this argument, the court can reasonably infer that it is Betty's position that "Congress had a more substantial purpose in enacting" FERSA: "to ensure that a duly named beneficiary will [actually] receive" the proceeds "and be able to make use of them." *C.f. Hillman*, 569 U.S. at 491.

Plaintiffs argue that Betty is not entitled to the proceeds of the TSP retirement account under the terms of the Divorce Decree. (*See* ECF No. 8 at 11 ("Thus, under the plain meaning of the Divorce Decree, Betty has waived her right to retain the proceeds of Gregory's TSP retirement account if and when paid to her by the TSP . . . .").) If Congress' intent in passing FERSA was to ensure that a "duly named beneficiary" would receive the proceeds *and* "make use of them," then Plaintiffs' interpretation of the Divorce Decree "would directly conflict with" Congress' objective because Plaintiffs' cause of action under the Divorce Decree "would take the . . . proceeds away from the named beneficiary and reallocate them to someone else." *Hillman*, 569 U.S. at 491. The court must therefore determine FERSA's purpose. *Hillman* is instructive.

In at least three cases, the United States Supreme Court "considered federal insurance statutes requiring that insurance proceeds be paid to a named beneficiary and held they pre-

empted state laws that mandated a different distribution of benefits." *See Hillman*, 569 U.S. at 492.

In *Wissner v. Wissner* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950) the federal statute at issue was the National Service Life Insurance Act (NSLIA) of 1940. In that case, a "California court [had] granted [a] decedent's widow, who was not the named beneficiary, an interest in the insurance proceeds as community property under state law." *Hillman*, 569 U.S. at 492. The Supreme Court "reversed, holding that NSLIA pre-empted the widow's state-law action to recover the proceeds." *Id*. "NSLIA provided," "[i]n pertinent part" "that the insured 'shall have the right to designate the beneficiary or beneficiaries of the insurance . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries.'" *Id*. (citation omitted). The Supreme Court "found" that the "California court's decision could not stand" because it "substituted the widow for the mother, who was the beneficiary Congress directed shall receive the insurance money." *Id*. (citations omitted) (internal quotation marks omitted).

In *Ridgway v. Ridgway*, 454 U.S. 46, 47, 102 S. Ct. 49, 51, 70 L. Ed. 2d 39 (1981) the Supreme Court "considered a similar question regarding the federal Servicemen's Group Life Insurance Act of 1965 (SGLIA)." *Hillman*, 569 U.S. at 493. In *Ridgeway*, "[a] Maine court imposed a constructive trust on insurance proceeds paid to a servicemember's widow, who was the named beneficiary, and ordered they be paid to the decedent's first wife as required by the terms of a divorce decree." *Id*. The Court held that "the constructive trust [was] pre-empted" and explained that the issue was controlled by *Wissner*. *Id*. "As in *Wissner*, the applicable provisions of SGLIA made clear that the insured service member possesse[d] the right freely to designate the beneficiary and to alter that choice at any time by communicating the decision in writing to the proper office." *Id*. (citations omitted) (internal quotation marks omitted). The Supreme Court

also noted that SGLIA established an order of precedence "which provided that the benefits would be first paid to such 'beneficiary or beneficiaries as the member ... may have designated by [an appropriately filed] writing received prior to death.'" *Id*. (citation omitted). "Notwithstanding some small differences between SGLIA and NSLIA," the Court concluded that SGLIA's unqualified directive to pay the proceeds to the properly designated beneficiary clearly suggested that no different result was intended by Congress." *Id*. (citation omitted) (internal quotation marks omitted).

In *Hillman*, the Supreme Court examined the Federal Employees' Group Life Insurance Act of 1954 (FEGLIA). *See Hillman*, 569 U.S. at 485. The Supreme Court noted that FEGLIA, like the statutes it had previously considered in *Wissner* and *Ridgway*, "creates a scheme that gives highest priority to an insured's designated beneficiary." *Id*. at 493. The Court further noted that FEGLIA, like SGLIA, includes an "order of precedence" that requires "that the insurance proceeds be paid first to the named beneficiary ahead of any other potential recipient." *Id*. at 493–94. "In FEGLIA, as in [those] other statutes, Congress 'spoke with force and clarity in directing that the proceeds *belong* to the named beneficiary **and no other**.'" *Id*. at 494 (quoting *Ridgway*, 454 U.S. at 55 (bold added)). In *Hillman*, the Court provided that the state law at issue in that case interfered with Congress' scheme because that state law "direct[ed] that the proceeds actually 'belong' to someone other than the named beneficiary by creating a cause of action for their recovery by a third party." *Id*. at 494. The Court ultimately held that "under FEGLIA," "where a beneficiary has been duly named, the insurance proceeds she is owed" "cannot be allocated to another person by operation of state law." *Id*. at 497.

Like the statutes at issue in *Wissner*, *Ridgway*, and *Hillman*, FERSA allows "an employee or member" to "designate one or more beneficiaries." 5 U.S.C. § 8424(2)(A)(c). And, like

8

FEGLIA and SGLIA, FERSA includes an order of precedence that requires the benefits to be paid "first to the named beneficiary ahead of any other potential recipient." *Hillman* 569 U.S. at 493–94. For example, FERSA provides that where an "employee or Member" dies, "[l]ump-sum benefits . . . shall be paid" "[f]irst to the beneficiary . . . designated by the employee or Member in a signed and witnessed writing received" by the Office of Personnel "before the death of such employee or Member." 5 U.S.C. § 8424(d). That section further provides that "a designation, change, or cancellation of beneficiary in a will *or other document* not so executed and filed has no force or effect." 5 U.S.C. § 8424(d) (emphasis added).

Because FERSA allows a member to designate his beneficiary, and because it includes an order of precedence that requires benefits be paid to this beneficiary ahead of any other recipient, this court holds that Congress' purpose in enacting FERSA was to ensure that the beneficiary both receives and is able to make use of those benefits.

Plaintiffs argue that the Divorce Decree constitutes a contract, and that under Utah law, they are entitled to the proceeds of Gregory's TSP retirement account. (*See* ECF No. 8 at 6.) Plaintiffs point this court to *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009). In *Kennedy* "the Supreme Court held that an ERISA plan administrator must distribute benefits to the beneficiary named in the plan, regardless of any state-law waiver purporting to divest that beneficiary of his right to the benefits." *Andochick v. Byrd*, 709 F.3d 296, 299 (4th Cir. 2013). But "*Kennedy* explicitly left open the question of whether, once the benefits are distributed by the administrator, the decedent's estate can enforce a waiver against the plan beneficiary." *Id*.

At oral argument, Plaintiffs' counsel argued that *Kennedy* "suggests" that "post-distribution claims based on a private [contractual] agreement between the parties"—as opposed

9

to "a state legislative scheme [enacted] to get around the superior federal statute"—"can be asserted post-distribution." (Oral Argument at 36:55—37:20.) Plaintiffs' counsel further argued that *Kennedy*, "on a factual basis and a legal basis, is on all fours with the issue that is currently before the court." (Oral Argument at 38:04—38:11.)

Plaintiffs' reliance on *Kennedy* is misplaced because it was an ERISA case. Unlike FERSA, "ERISA does not include a statutory order of precedence, and its regulations do not expressly prohibit the waiver or restriction of beneficiary designations." *See Walsh v. Montes*, 2017-NMCA-015, ¶ 12, 388 P.3d 262, 265; *see also Van Den Broek v. Tang*, 88 Va. Cir. 65 (2014) ("unlike FERSA, FEGLIA, and SGLIA, ERISA does not contain a statutory order of, precedence. This explains why *Kennedy* does not rely upon *Ridgway, Wissner,* or other cases that discuss statutory order of precedence . . . ."). The court agrees with much of the well-reasoned analysis in *Van Den Broek*, including the following: "while the *Kennedy* Court left open the possibility of a post-receipt lawsuit, the case law interpreting the statutes most similar to that at issue here—cases such as *Hillman, Ridgway,* and *Wissner*—stand for the proposition that a lawsuit that has the practical effect of negating the statutory order of precedence, whether it seeks to obtain proceeds pre- or post-receipt, **is preempted**." *Van Den Broek*, 88 Va. Cir. 65 at *8 (emphasis added); *c.f.*, *Dohnalik v. Somner*, 467 F.3d 488, 491 (5th Cir. 2006) ("While limiting ERISA's preemptive force to state statutes and allowing beneficiaries to waive ERISA claims is consistent with Supreme Court precedent—albeit fairly contested—the same waiver analysis cannot apply to the SGLIA in light of *Ridgway*.").[1]

---

[1] "The question raised" in *Dohnalik* was "whether the designation of an SGLIA policy beneficiary survives a state divorce decree purporting to divest the designee of any such interests." *Dohnalik*, 467 F.3d at 489. Apart from noting that "ERISA waiver cases [were] inapplicable," the Fifth Circuit also noted that the waiver in that case "would only be effective if a state divorce decree could override the explicit terms of the SGLIA. *Ridgeway* is quite clear that a policy holder's explicit designation 'pre-empts all state law that stands in its way.'" *Dohnalik v. Somner*, 467 F.3d 488, 489 (5th Cir. 2006)

For the purpose of this Motion, Plaintiffs have not disputed that Betty is the beneficiary of the TSP retirement account. Plaintiffs' argument that Betty waived her interest in the retirement account could only succeed if the state divorce decree could override Congress' purpose in enacting FERSA—to ensure that the beneficiary both receives and is able to make use of those benefits. Plaintiffs' effort to obtain these proceeds—pre- or post-receipt is preempted. Defendant's Motion to Dismiss is GRANTED.

<u>Action Against TSP and Federal Retirement Thrift Investment Board</u>

As discussed above, on August 8, 2018, a Complaint was filed against the Federal Retirement Thrift Investment Board and against Thrift Savings Plan. (1:18-cv-98, ECF No. 2.) And as discussed above, in the Complaint filed in that case, the Plaintiffs alleged that Gregory "executed a TSP-3 change of beneficiary form identifying Plaintiffs as the new beneficiaries of his TSP retirement account." (1:18-cv-98, Compl. ¶ 17, ECF No. 2 at 3.) All parties in both cases filed a stipulated motion to consolidate the cases. (*See* ECF No. 14; 1:18-cv-98, ECF No. 16.) While the court has granted Betty Diamond's Motion to Dismiss the Complaint in Case No. 2:18-cv-722, the complaint originating in 1:18-cv-98 remains. Betty Diamond has presented the court with no authority that would allow this court to order TSP to distribute her the funds at issue before the action in 1:18-cv-98 is resolved. Absent Betty Diamond's submission of such authority, the court allows Plaintiffs to pursue their suit against the Federal Retirement Thrift Investment Board and against Thrift Savings Plan.

**Conclusion**

For the reasons discussed above, Betty Diamond's Motion to Dismiss, (ECF No. 3) is GRANTED. But the Complaint originating in 1:18-cv-98 remains. The court can therefore not

close the case at this time.

DATED this 20th day of May, 2019.

BY THE COURT:

CLARK WADDOUPS
United States District Court Judge